**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| **EDUARDO RODRIGUEZ ESTEVEZ,**<br><br>Plaintiff,<br><br>v.<br><br>**COMMISSIONER OF SOCIAL SECURITY,**<br><br>Defendant. | Civ. No. 14-6337 (KM)<br><br>**OPINION** |

On October 14, 2014, Eduardo Rodriguez Estevez, *pro se,* filed a complaint seeking review pursuant to 42 U.S.C. § 405(g) and 5 U.S.C. § 706 of the Social Security Agency's denial of his application for disability insurance benefits under Title II of the Act, 42 U.S.C. §§ 401-434, for the period February 28, 2011 (the alleged onset date) through December 24, 2013 (the date of the ALJ's decision). The Appeals Council denied the plaintiff's request for review, rendering it a final decision of the Commissioner. (R. 4–9)[1]

Under Local Rule 9.1 the plaintiff's Statement was due on December 23, 2014, and his Brief was due on February 22, 2015. Neither was filed. By Order to Show Cause the Court afforded Plaintiff the opportunity to comply. Plaintiff did not respond to the Order to Show Cause. He instead filed a notice of appeal from my order. (ECF no. 12) On April 12, 2016, the Court of Appeals dismissed the appeal for lack of jurisdiction (ECF no. 13), returning jurisdiction to this Court.

The same day, April 12, 2016, I entered an order giving the plaintiff until May 1, 2016, to file a brief stating in what manner he believes the

---

[1]   Pages in the administrative record, filed at ECF no. 8, are cited as "R. _".

1

Commissioner's decision was incorrect. (ECF no. 14) The plaintiff filed nothing. My order directed that, if plaintiff did not respond, the Commissioner should file a short statement with citations to the record supporting affirmance. (*Id.*) The Commissioner has filed such a response in the form of a letter dated June 7, 2015. (ECF no. 15)

I have elected not to treat the matter as abandoned or to dismiss the complaint as a sanction for this *pro se* plaintiff's failure to comply with briefing requirements. Rather I will, on the basis of the materials before me, review the decision of the Commissioner.

I. **LEGAL STANDARDS**

A. **Standard of Review**

As to legal issues, this Court's review is plenary. *See Schaudeck v. Comm'r of Soc. Sec.*, 181 F.3d 429, 431 (3d Cir. 1999). As to the factual findings of the Administrative Law Judge ("ALJ"), however, this Court is directed "only to determine whether the administrative record contains substantial evidence supporting the findings." *Sykes v. Apfel*, 228 F.3d 259, 262 (3d Cir. 2000). Substantial evidence is "less than a preponderance of the evidence but more than a mere scintilla." *Jones v. Barnhart*, 364 F.3d 501, 503 (3d Cir. 2004) (citation omitted). "It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.*; *accord Richardson v. Perales*, 402 U.S. 389, 401 (1971).

> [I]n evaluating whether substantial evidence supports the ALJ's findings . . . leniency should be shown in establishing the claimant's disability, and . . . the Secretary's responsibility to rebut it should be strictly construed. Due regard for the beneficent purposes of the legislation requires that a more tolerant standard be used in this administrative proceeding than is applicable in a typical suit in a court of record where the adversary system prevails.

*Reefer v. Barnhart*, 326 F.3d 376, 379 (3d Cir. 2003) (internal citations and quotations omitted). When there is substantial evidence to support the ALJ's

factual findings, this Court must abide by them. *See Jones*, 364 F.3d at 503 (citing 42 U.S.C. § 405(g)).

### B.  The Five-Step Sequential Analysis

Under the authority of the Social Security Act, the Social Security Administration ("SSA") has established a five-step evaluation process for determining whether a claimant is entitled to benefits. 20 C.F.R. §§ 404.1520, 416.920; *see also Plummer v. Apfel*, 186 F.3d 422, 428 (3d Cir. 1999).

> *Step 1*: Determine whether the claimant has engaged in substantial gainful activity since the onset date of the alleged disability. 20 C.F.R. §§ 404.1520(b), 416.920(b). If not, move to step two.
> *Step 2:* Determine if the claimant's alleged impairment, or combination of impairments, is "severe." *Id.* §§ 404.1520(c), 416.920(c). If the claimant has a severe impairment, move to step three.
>
> *Step 3*: Determine whether the impairment meets or equals the criteria of any impairment found in the Listing of Impairments. 20 C.F.R. Part 404, Subpart P, Appendix 1, Part A. If so, the claimant is automatically eligible to receive benefits; if not, move to step four. *Id.* §§ 404.1520(d), 416.920(d).
>
> *Step 4*: Determine whether, despite any severe impairment, the claimant retains the Residual Functional Capacity ("RFC") to perform past relevant work. *Id.* §§ 404.1520(e)-(f), 416.920(e)-(f). If not, move to step five. Up to this point (steps 1 through 4) the claimant has borne the burden of proof.
>
> *Step 5*: The burden shifts to the SSA to demonstrate that the claimant, considering his or her age, education, work experience, and RFC, is capable of performing other jobs that exist in significant numbers in the national economy. 20 C.F.R. §§ 404.1520(g), 416.920(g); *see Poulos v. Comm'r of Soc. Sec.*, 474 F.3d 88, 91–92 (3d Cir. 2007). If so, DIB will be denied; if not, they will be awarded.

## III.   ANALYSIS OF THE COMMISSIONER'S DECISION

### A. Steps 1 through 3

Mr. Estevez, assisted by counsel, Manuel Garcia, Esq., had a hearing before ALJ Jack Russak on December 17, 2013. The ALJ reviewed the record and heard testimony from Mr. Estevez and from Gerald D. Belchick, a vocational expert.

At step 1, ALJ Russak found that Plaintiff had not engaged in substantial gainful activity since February 8, 2011, the alleged onset date. (R 96) Substantial gainful activity ("SGA") is defined as work activity that is both substantial and gainful.

At step 2, the ALJ found that Plaintiff had the following severe impairments: degenerative disc disease, obesity, left shoulder tendinopathy and impingement, bilateral lateral epicondylitis, and mood and affective disorder. R. 96.

The ALJ rejected claims of hypertension, sleep apnea, and a hernia/prostate issue. This rejection was supported by substantial evidence. As to hypertension, the record showed no significant treatment, and at any rate the condition was stable and there was no evidence that it caused any limitation of function. As to sleep apnea, the record showed a recent diagnosis and recommendation of a CPAP mask, which plaintiff had not yet obtained. No functional limitation was noted in the record. As to the hernia, the record showed a surgically repaired hernia some eight years previously, for which there was no current treatment. There was evidence of a small left inguinal hernia, but the treating doctor, Patrick McGovern, M.D., did not recommend anything beyond monitoring, and stated that it was not a major issue. Urinary frequency has been controlled with medication. Prostate issues were not serious or severe. (R. 96–97) The ALJ noted that, although these three

impairments were not severe, the limitations of the RFC would as a practical matter tend to avoid resulting problems.

At step 3, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listened impairments in 20 CFR Part 404, Subpart P, Appendix 1. R 21 (citing 20 CFR 404.1520(d), 404.1525, 404.1526). He properly considered the impairments, including obesity, alone and in combination. This component of the ALJ's decision properly applied the required standards to the substantial evidence of record.

As to degenerative disc disease, the ALJ considered listing 1.04, but found that there was no evidence that Plaintiff had the requisite motor and sensory deficits, or that he suffers from spinal arachnoiditis or lumbar spinal stenosis resulting in pseudoclaudication. (R. 97)

As to the shoulder and elbow impairments, the ALJ considered listing 1.02B but found it inapplicable because Plaintiff is also to perform fine and gross movements. (R. 98)

As to the mental impairments, the ALJ considered listing 12.04 and 12.06. Appendix 1 contains three lists of criteria, known as Paragraphs A, B, and C. *See* 20 C.F.R. Pt. 404, Subpt. P., App. 1, §§ 12.04, 12.06. The claimant must either (1) satisfy paragraphs A *and* B; or (2) satisfy paragraph C.

Under paragraph B, the ALJ properly analyzed the evidence in relation to the relevant criteria:

—As to activities of daily living, the ALJ found mild, not marked restriction. Plaintiff testified that he reads the Bible; watches television; uses a cellphone and computer; goes shopping with his girlfriend; helps with chores, including taking out the garbage; and goes for walks in the park. (R. 98) This evidence of record supports the finding.

5

—As to social function, the ALJ found no particular evidence of any difficulty. Plaintiff has never been laid off from a job because he could not get along with others; lives with his girlfriend and adult daughter; has good relations with his five siblings; and goes to church. (R. 98) This evidence of record supports the finding.

—As to concentration, persistence and pace, the ALJ found moderate difficulties. Plaintiff reported that he can pay bills and count change. He watches and follows programs on television. He uses a computer and reads occasionally. (R. 98) Testing showed intact memory. This evidence of record supports the finding.

These findings, the ALJ properly found, did not add up to either two marked limitations or one marked limitation plus repeated and extended episodes of decompensation. (R. 98)

Under paragraph C, the ALJ properly analyzed the evidence in relation to the relevant criteria. He properly found that the medical evidence contained no evidence of episodes of decompensation (or a residual disease process predicted to cause such); no evidence of stays for a year or more in a highly supportive living arrangement; and no evidence that Plaintiff is unable to function independently outside the home. (R. 99)

### B. Residual Functional Capacity (RFC)

The residual functional capacity (RFC) represents the most the plaintiff can do, given his limitations. *See* 20 C.F.R. § 404.1545(a). ALJ Russak found that Mr. Estevez retained the following RFC:

> [T]he claimant has the residual functional capacity to perform medium work as defined in 20 CFR 404.1567(c) except the claimant can only occasionally climb ramps and stairs, stoop, kneel, and crouch. He can never climb ladders, ropes or scaffolds or crawl. His left non-dominant arm is limited to only occasional reaching and overhead reaching. The claimant is limited to a low stress job defined as having only occasional decision making and only occasional changes in the work setting and only occasional

6

judgment required on the job and he is limited to simple routine tasks.

(R. 99)

### 1. Standard for weighing evidence

The RFC was based on the ALJ's analysis of the evidence of Mr. Estevez's impairments. The ALJ properly considered first, whether a medical impairment exists that could reasonably be expected to produce the symptoms complained of, and second, whether the evidence supported the plaintiff's claims as to the extent to which those symptoms limit his functioning. The evidence considered included the medical evidence, as well as the plaintiff's own testimony.

A claimant's subjective complaints merit careful consideration, but the ALJ is not required to accept them uncritically. *Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 363 (3d Cir. 2011) (citing 20 C.F.R. § 416.929). Rather, the ALJ is required to assess whether and to what degree such complaints are credible. *See* SSR 96-7p, 1996 WL 374186, at *4.

> [W]hile an ALJ must consider a claimant's subjective complaints, an ALJ has discretion to evaluate the credibility of a claimant and arrive at an independent judgment in light of medical findings and other evidence regarding the true extent of the pain alleged by the claimant. Subjective complaints cannot alone establish disability.

*Gantt v. Comm'r Soc. Sec.*, 205 F. App'x 65, 67 (3d Cir. 2006) (internal quotations and citations omitted). *See also* 20 C.F.R. § 404.1529(c); *Malloy v. Comm'r of Soc. Sec.*, 306 Fed. App'x 761, 765 (3d Cir. 2009) (citing *Van Horn v. Schweiker*, 717 F.2d 871, 873 (3d Cir. 1983)); *Davis v. Com'r of Soc. Sec.*, 240 F. App'x 957, 960 (3d Cir. 2007).

The ALJ may reject subjective complaints, for example, if they are not credible in light of the other evidence of record. *Schaudeck v. Comm'r of Soc. Sec.*, 181 F.3d 429, 433 (3d Cir. 1999). The ALJ is called upon to evaluate the intensity, persistence, and limiting effects of a claimant's symptoms to determine the extent to which they limit his ability to perform basic work activities. *See* 20 C.F.R. § 404.1529(c)(2). As to that issue, "[o]bjective medical evidence ... is a useful indicator." *Id.* The ALJ may also examine factors that

precipitate or aggravate the symptoms, medications and treatments, and daily living activities. 20 C.F.R. § 1529(c)(3).

The ALJ's credibility determination "must contain specific reasons for the finding on credibility, supported by the evidence in the case record." SSR 96-7P; *see also* 20 C.F.R. §§ 404.1529(b), 416.929(b). What is required overall is that the ALJ give the claimant's testimony "serious consideration," state his reasons for discounting it, and make "specific findings." *Rowan v. Barnhart*, 67 F. App'x 725, 729 (3d Cir. 2003). Where that has been done, a reviewing court will defer to the ALJ's credibility determinations.

### 2. Mental health

Plaintiff did not originally claim any mental health disability in his applications. The ALJ found that he had recently started conservative treatment of what amounted to a mild and stable condition. There was substantial evidence for that conclusion. (R. 100)

Ghulam Bajwa, M.D., stated that the plaintiff reported depression and anxiety, and other treatment notes showed a history of drinking five to six beers on weekends. Dr. Bajwa noted good grooming, normal mental status, appropriate affect, fair insight and judgment, intact memory, and no psychomotor activity. There were no delusions or hallucinations. Dr. Bajwa started plaintiff on Lexapro and Trazodone, drugs used to treat anxiety and depression. (R. 100)

The ALJ noted that plaintiff was having only 20 minute monthly medication checkups. Functioning appeared normal in that the plaintiff socialized, took public transportation, attended church, watched television, helped with chores and shopped. (R. 104)

The limitations in the RFC take into account limitations caused by the mental health impairments. The RFC limits plaintiff to low stress work: occasional decision making, occasional changes to the work setting, occasional exercises of judgment and simple routine tasks. These limitations are well supported by the evidence of record.

### 3. Arm and back impairments

Much of the case focused on the effect of the impairments to plaintiff's back and arm. The ALJ accepted that these impairments are real, but did not credit plaintiff's contentions that they are wholly disabling. Substantial evidence supported that conclusion.

ALJ Russak heard the testimony of Mr. Estevez. Estevez was 58 years old, 5'5" and 217 pounds. Plaintiff acknowledged that he had traveled the hearing on his own by bus. He complained of knee and ankle pain when he climbed the stairs to his second floor apartment. He reported receiving medication for his "nerves" and to help him sleep from a psychiatrist, Dr. Bajwa. He was seeing a therapist named Mildred every two weeks. He reported disability as a result of back pain, knee pain, ankle pain, prostate trouble, and a hernia. He acknowledged that the hernia surgeries had been successful. He was unsure of the source of ankle swelling, and stated it might be due to his heart, but he had not been examined for that. Plaintiff reported being able to either sit or stand for up to 1½ hours. (R. 99–100, summarizing R. 114–37)

The ALJ then considered the other evidence in the case in order to evaluate the credibility of plaintiff's statement that he was totally unable to work.

Plaintiff injured his back in 2010 in a forklift driving accident. Dr. Lavian Pejman diagnosed him with lumbar strain, bilateral elbow strain, and abdominal wall strain. X-rays revealed no lumbar fractures. He was prescribed Metaxalone and Naproxen and released. He received physical therapy.

On January 17, 2011, plaintiff saw Dr. Murli Raghavan, who noted some improvement of symptoms. Plaintiff had been working with restricted duty and tolerating it well. (R. 101) A followup MRI on January 20, 2011 showed minimal degenerative change of the lumbar spine. (R. 101) Plaintiff stopped working on January 28, 2011, but that was because the company went out of business. *(Id.)*

Plaintiff's job at the time of the accident was at the medium to heavy exertional level. Immediately following the accident, plaintiff was restricted to lifting no more than ten pounds.

In late January and February, however, three separate physicians—Drs. Raghavan, Oglesby, and Chen—stated that plaintiff could return to regular duty. (R. 702, 705, 709) The ALJ assigned weight to those conclusions of treating physicians. (R. 102)

Physical examination findings in the relevant period were unremarkable. (R. 823) Straight leg raising and walking on toes and heels were normal. (R. 663, 666, 682, 777, 823) In September 2012, he got on and off the examination table and in and out of a chair unassisted. His gait was intact and he could squat unaided without discomfort. (R. 777)

On September 25, 2012, Dr. Kern performed a consultative examination at the request of the SSA. He found that plaintiff could sit for unlimited periods, stand for up to 30 minutes, and walk without assistance. Dr. Kern concluded that the plaintiff should limit overhead motion on the left side, could lift up to 30 pounds occasionally, and 20 pounds frequently. He found no limitation to the right arm. All in all, Dr. Kern found plaintiff fit to perform work at a medium exertional level. The ALJ credited this opinion, which was consistent with the conservative treatment regime, the lack of any surgery or hospitalizations, and plaintiff's rapid return to work after the accident.

On October 1, 2012, a lumbar spine MRI was normal and a cervical spine MRI showed mild degenerative changes. (R. 101)

On October 25, 2012, Dr. Joseph Udomsaph, a State agency evaluator, reviewed the medical evidence. He concluded that plaintiff could perform work at a medium exertional level, with frequent stair climbing, crouching, stopping and balancing, and occasional climbing of ladders, ropes and scaffolds. He noted limitations to reaching with the left arm. (R. 103)

On April 15, 2013, Dr. Harvey Yeager affirmed and elaborated on those opinions. Because of complaints of pain, Harvey downgraded the general climbing capabilities to occasional, and the climbing of ladders and such to

never. Musculoskeletal pain complaints, however, were stable and responsive to conservative treatment. Objective physical tests were unremarkable, and recent records continued to show no atrophy, weakness, impairment of gait, or abdominal tenderness. Tenderness to the right lower back was improved. (R. 103–04)

All of these evaluations by doctors constituted substantial evidence to support the RFC as found by ALJ Russak. The ALJ also considered, discussed, and gave reasons for assigning less weight to contrary medical evidence.

On August 19, 2011, Dr. Horwitz examined plaintiff in connection with a worker's compensation claim. Dr. Horwitz found a permanent impairment of 47.5% of the right arm and 42.5% of the left arm, an orthopedic disability of 55% for the abdominal injuries and an orthopedic disability of 35% for the lumbosacral spine. On September 12, 2011, Dr. Komotar found permanent neurological disability of 20% of the right arm and left arm, permanent neurological disability of 20% for lumbosacral radiculopathy and a permanent neuropsychiatric disability of 20% for adjustment disorder. These opinions the ALJ gave less weight, because (a) worker's compensation standards are distinct from those governing SSA disability, and (b) these reports were prepared in anticipation of litigation, and plaintiff did not submit records from the employer's insurance doctor.

Having weighed the evidence, the ALJ concluded that "the claimant's statement concerning the intensity, persistence and limiting effect of these symptoms are not entirely credible...." (R. 100) He discharged his duty to weigh and discuss the evidence, pro and con, and to make findings. *See* pp. 7–8, *supra*. It was based on that weighing of the evidence that the ALJ reached his determination of Mr. Estevez's RFC. The RFC is therefore supported by substantial evidence. I will defer to and sustain the ALJ's findings.

**C.    Steps 4 and 5**

The ALJ accepted that plaintiff could not perform his past relevant work as a hi-lo (forklift) operator, which requires medium to heavy exertion. Further

limiting available work would be the plaintiff's age (over 55), limited education, and limited ability to communicate in English. (R. 104)

The ALJ found that in light of those factors, however, and plaintiff's RFC, there existed jobs that exist in significant number in the national economy that plaintiff could perform. That finding rested on the testimony of a vocational expert. (R. 138–52)

That VE testimony took into account that plaintiff had additional limitations that would not permit the full range of medium exertional work. (R. 105) Examples of jobs at the medium exertional level that plaintiff could perform, however, included (1) customer service bagger (DOT code 920.687-014) SVP-2, 500,000 jobs nationally; (2) laundry worker (DOT code 309.677-014) SVP-2, 210,000 jobs nationally; (3) deliverer merchandise (DOT code 299.477-010) SVP-2, 83,000 jobs nationally. (R. 105)

A vocational expert may rely on the DOT, and the ALJ may rely on the VE's testimony to the extent it is consistent with the DOT. *See* 20 C.F.R. § 404.1566 (d)(1) ("we will take notice of—(1) *Dictionary of Occupational Titles,* published by the Department of Labor...."); *Sargent v. Comm'r of Soc. Sec.*, 476 F. App'x 977, 980 n.1 (3d Cir. 2012) ("Both the ALJ and the [vocational expert] relied on the classifications in the DOT, as the applicable regulations permit."). Indeed, the ALJ may himself rely on the DOT in lieu of calling a vocational expert. *See Benson v. Comm'r of Soc. Sec.*, No. 3:11-CV-4629, 2012 WL 3133937, at *10 (D.N.J. July 31, 2012); *see also Coates v. Colvin*, No. CIV. 14-0265, 2014 WL 4792199, at *4 (W.D. Pa. Sept. 24, 2014) *Devault v. Astrue*, No. 2:13-CV-0155, 2014 WL 3565972, at *6 (W.D. Pa. July 18, 2014).

The ALJ was entitled to rely on this testimony, which satisfies the substantial evidence standard.

### D.   Additional Evidence

One issue remains. After the ALJ hearing, while the case was on appeal to the Appeals Council, plaintiff submitted some 76 pages of additional medical

records. (R. 11–87) The Appeals Council examined this material and determined that it all dated from after the ALJ's decision, which is dated December 24, 2013. The bulk of this additional material dates from April–June, 2014.

The Appeals Council was empowered to consider after-acquired evidence, but only to the extent it was relevant to the pre-December 24, 2013 period of disability. That is, any evidence submitted to the Appeals Council must be "'new and material' evidence that relates to the period on or before the date of the ALJ's hearing decision. *See* 20 C.F.R. § 404.970(b)" *Matthews v. Apfel*, 239 F.3d 589, 591–92 (3d Cir. 2001).

The Appeals Council considered this new evidence but found it was not relevant to the period of disability. Rather, this new information was

> about a later time. Therefore, it does not affect the decision about whether you were disabled beginning on or before December 24, 2013. If you want us to consider whether you were disabled after December 24, 2013, you need to apply again. The new information you submitted is available in your electronic file for you to use in your new claim.

(R. 5) The Appeals Council further advised Mr. Estevez that if he filed a new claim within 6 months, then the agency could use February 10, 2014, the date of his request for review, as the date of the new claim. (*Id.*)

Assuming I have jurisdiction to review that determination, I would uphold it. The new evidence does not have any straightforward application to Mr. Estevez's disability status in the relevant period. The record does not reveal whether he reapplied as he was invited to do.

## CONCLUSION

For the foregoing reasons, the decision of the Secretary is AFFIRMED.

Dated: June 8, 2016

_____
**KEVIN MCNULTY**
**United States District Judge**